IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EVELYN RAMEY LACY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:13-cv-1312-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Evelyn Lacy Ramey[1] seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

**Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including coronary artery disease, hyperthyroidism, hypertension, status post transient ischemic attack, including memory problems, congestive heart failure, chest pain status post myocardial infarction and angioplasty, and obesity. *See* Administrative Record [Dkt. No. 13] ("Tr.") at 20-21. After her applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested

---

[1] Plaintiff's initial complaint was filed under the name and with the case style Evelyn Ramey Lacy. A review of the records indicates her name is actually Evelyn Lacy Ramey, and Plaintiff made this correction in the case style for her Brief on Appeal [Dkt. No. 17]. Plaintiff must file a notice to change the case name, however, with the Clerk's office to properly correct this error.

a hearing before an administrative law judge ("ALJ"). That hearing was held on April 28, 2010. *See id.* at 18. At the time of the hearing, Plaintiff was 52 years old. *See id.* at 34. She is a high school graduate and has past work experience as a customer service clerk. *See id.* at 35, 54. Plaintiff has not engaged in substantial gainful activity since July 2, 2008. *See id.* at 20.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from hypertension, status post transient ischemic attack, congestive heart failure, chest pain status post myocardial infarction and angioplasty, and obesity, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 21-24. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of unskilled light work but could not return to her past relevant employment. *See id.* at 25. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a nut and bolt assembler, ticket seller, and a cleaner/housekeeper – jobs that exist in significant numbers in the national economy. Given her age, education, and exertional capacity for unskilled light work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.* at 25-26.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two general grounds: (1) substantial evidence does not support the

ALJ's final decision that Plaintiff was not disabled and (2) the ALJ committed an error under *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), in making his findings. *See* Dkt. No. 17 at 1. With respect to her substantial evidence argument, Plaintiff more particularly argues that the ALJ's RFC did not support his conclusion that she could perform the jobs identified by the vocational expert. *See* Dkt. No. 17 at 12. Plaintiff claims that the vocational expert's testimony and conclusions did not take into account Plaintiff's inability to perform substantially all of the requirements of the jobs she identified. *See id.*

The Court determines that the hearing decision should be affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must

scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff first contends that the ALJ erred in finding that Plaintiff could perform work as a nut and bolt assembler, ticket seller, and a cleaner/housekeeper, in light of her RFC. *See* Dkt. No. 17 at 7. More specifically, Plaintiff argues that there is a conflict between the vocational expert's ("VE") testimony and the definitions of light work found in the *Dictionary of Occupational Titles* ("DOT") and the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"). *See id.* at 8-9. Plaintiff next argues that the ALJ erred in failing to find that Plaintiff's memory loss was a severe impairment and to consider it in his findings. *See id.* at 11.

1.    <u>Substantial Evidence Supports the ALJ's Findings.</u>

At Plaintiff's hearing, the ALJ solicited testimony from a VE. The ALJ posed to the VE a hypothetical involving an individual with Plaintiff's age, education, and work experience who could sit for 6 hours and stand and/or walk 4 to 6 hours in an 8-hour work day. *See* Tr. at 54. Based on this limitation, as well as other limitations not relevant to this opinion, the VE concluded that Plaintiff would be precluded from doing her past relevant work but stated she could do a wide range of light unskilled work. *See id.* at 54-55. Initially, the VE said that the occupation base for light unskilled work was 1,570 jobs, but, taking into account Plaintiff's "postural limitations as well as no heights," the occupation base was lowered to 1,375. *See id.* From there, the VE identified specific examples in that occupation base, including nut and bolt assembler, ticket seller, and cleaner/housekeeper. *See id.* The ALJ asked the VE if her testimony was consistent with the DOT, and the VE responded affirmatively. *See id.* Plaintiff's attorney questioned the VE but only to pose a separate hypothetical, supposing that the individual were limited to standing and walking two hours and sitting 6 hours in an 8-hour work day. *See id.* at 56. That hypothetical would exclude those jobs identified by the VE. *See id.* at 57.

> In his decision, the ALJ found Plaintiff to have the following RFC:
>
> to perform and sustain a wide range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with sitting 6 hours total in an 8-hour workday, and standing or walking 4 to 6 hours total in an 8-hour workday. She may lift 20 pounds occasionally and 10 pounds frequently with no climbing ladders and not work at unprotected heights. From a mental standpoint, the claimant retains the ability to sustain adequate

>concentration, follow simple instructions, and respond appropriately to coworkers and supervisors.

*Id.* at 23. In making this determination, the ALJ considered the evidence and concluded that, while Plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms, her allegations of complete inability to work were not supported by the record. *See id.* at 24. The ALJ concluded that Plaintiff's ability to function was not so severely impaired as to preclude unskilled work at the light level of exertion. *See id.* Finally, the ALJ noted that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* at 26.

Plaintiff does not challenge the ALJ's assessment of her RFC. Rather, Plaintiff argues that the ALJ's conclusion is incorrect because the Social Security Regulations state that light work involves a significant amount of walking or standing and that the VE's testimony – and thus the ALJ's conclusion – failed to take into account the fact that Plaintiff cannot stand or walk for a significant amount of time. *See* Dkt. No. 17 at 10-13. Plaintiff states there is no definition of a "good deal" or "to a significant degree" – the amount of standing and walking required for light work under the Social Security Regulations – but argues that based on the state agency Physical RFC forms, which use a break point of 2-hours and 6-hours to differentiate sedentary and light work, it is "widely accepted that light work requires the ability to stand and/or walk for at least 6-hours in an 8-hour workday." *Id.* at 11. Because the RFC and the VE's testimony stated that Plaintiff was limited to walking or standing for only 4 to 6 hours total in

an 8-hour workday, Plaintiff contends an unresolved conflict exists between the DOT, SCO, and the VE's testimony and conclusion. *See id.* at 8-10.

In her Response, Defendant argues that the VE did account for Plaintiff's limitations, as evidenced by the VE's acknowledgment that Plaintiff could only engage in a wide (as opposed to full) range of light work and by reducing the number of jobs Plaintiff could perform due to her limitations. *See* Dkt. No. 18 at 3. Defendant notes that Plaintiff's counsel did not further question the VE after she testified regarding the 4-to-6 hour limitation and argues that failing to further explore this alleged conflict at the time of the hearing dictates the conclusion that any such conflict cannot now constitute reversible error. *See id.* Defendant also argues that Plaintiff ignores that the ability to stand or walk between 4 and 6 hours may indicate that Plaintiff can stand or walk up to 6 hours in an 8-hour workday, making her argument moot. *Id.* at 4.

As an initial matter, contrary to Plaintiff's assertion, Social Security Regulation 83-10 defines "a good deal of walking or standing" as "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983); *see also Pruitt v. Barnhart*, No. 3:01-cv-730, 2002 WL 1155851, at *4 (N.D. Tex. May 29, 2002). Plaintiff argues that, because the RFC states that she can stand or walk for 4 to 6 hours, it conflicts with a finding that she can perform light work, because it requires 6 hours of walking or standing.

How to handle an alleged conflict between VE testimony and the DOT – and other similar publications – has been addressed by Social Security Regulations and case law. Social Security Regulation 00-4p states that, "before relying on VE ...

evidence to support a disability determination or decision," the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs ... and information in the [DOT], ... and [e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000). The Fifth Circuit addressed this issue in *Haas v. Barnhart,* 91 F. App'x 942 (5th Cir. 2004). In *Haas*, the plaintiff contended that the ALJ erred because he failed to explain a conflict between the "VE's testimony as to exertional level for a messenger and that provided for that job in the DOT." *Haas*, 91 F. A'ppx at 947. As recognized in *Haas*, the Fifth Circuit previously held that, where a conflict exists between the VE's testimony and the DOT, the ALJ may only rely on the VE's testimony where the record reflects an adequate basis for doing so. *See id.* (citing *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000)). The Fifth Circuit also has made clear, however, that

> claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey*, 230 F.3d at 146-47.

Plaintiff's RFC indicates that she can stand or walk 4 to 6 hours in an 8-hour workday. Thus, her exertional limitations do not fall squarely within the full range of light work. In situations in which a claimant's limitations do not place them squarely within the exertional levels of a range of work, "consultation with a vocational expert may be helpful or even required." *Haynes v. Barnhart*, 416 F.3d 621, 628 (7th Cir.

2005). Additionally, the DOT and other regulations speak in terms of <u>maximum</u> sustained work capability. *See id.*; SSR 00-4p; *Haas*, 91 F. App'x at 948.

Here, the VE was presented with a hypothetical: an individual with certain limitations, including an ability to stand or walk only 4 to 6 hours. Because these limitations were not squarely within the exertional levels of a range of work, consulting with a VE was appropriate, *see Haynes*, 415 F.3d at 628, and, taking into account that limitation, the VE provided certain jobs. In fact, the VE even reduced the number of jobs in the occupation base due to Plaintiff's limitations. *See* Tr. at 55 ("If we consider the light unskilled occupation base at 1,570, the postural limitations as well as no heights would erode the occupational base down to approximately 1,375."). Thus, it does not appear that a conflict between the VE's testimony and the DOT necessarily exists. *See Haas*, 91 F. App'x at 948.

Assuming *arguendo* that a conflict does exist, the Court finds that it does not constitute grounds for reversible error. There are two types of conflicts: (1) implied or indirect conflicts that did not undergo adversarial development at the administrative hearing and (2) direct and obvious conflicts that the ALJ fails to explain or resolve. *See Nichols v. Comm'r of Social Security Admin.*, No. 3:10-cv-651-G-BF, 2011 WL 2669056, at *6 (N.D. Tex. June 10, 2011), *rec. adopted*, 2011 WL 2669099 (N.D. Tex. July 6, 2011). "A direct and obvious conflict exists 'when the vocational expert's testimony creates a conflict or discrepancy between the ALJ's determination of the claimant's residual functional capacity and the DOT job descriptions.'" *Id.* (quoting *Carey*, 230 F.3d at 146).

Here, no direct and obvious conflict appears to exist. The VE acknowledged the postural limitations of Plaintiff. *See* Tr. at 55. The representative occupations do not indicate on their face that they would require the <u>maximum</u> range of standing and walking of 6 hours. Nut and bolt assembler details responsibilities such as weighing and counting specified amounts of nuts and bolts and recording numbers on production forms. *See* DOT, Code 929.587-010. Additionally, the description of ticket seller also indicates that a large portion of the job responsibilities could be performed sitting or standing. *See* DOT, Code 211.467-030. While housekeeper may have more responsibilities to be performed standing or walking, the description also includes tasks such as folding, counting, and marking linens, all tasks that may be completed from a seated position. *See* DOT, Code 323.687-014. Thus, none of these descriptions creates a conflict "between the ALJ's determination of the claimant's residual functional capacity and the DOT job descriptions." *Carey*, 230 F.3d at 146.

Because the conflict is therefore an implied or indirect conflict, the VE's testimony may be relied on without resolving any alleged conflict, so long as the record reflects an adequate basis for doing so. The ALJ asked the VE if her testimony was consistent with the DOT, and the VE answered affirmatively. In the decision, the ALJ discussed in detail the medical records and Plaintiff's symptoms. He noted that, while Plaintiff had doctor visits, much of her tests and examinations revealed normal findings. *See* Tr. at 21-22. The ALJ also noted that Plaintiff could perform many social activities and household tasks, such as driving, attending church, performing her personal care, making her bed, and caring for her eight-month-old granddaughter. *See*

*id.* at 22, 24. The ALJ acknowledged that Plaintiff complained of memory problems but concluded that the medical records did not present any objective medical evidence to support her complaints. *See id.* at 23. The ALJ reviewed the medical records and found that Plaintiff's claimed "disturbance of ability to sustain focus, attention, and concentration" caused mild restrictions, which he incorporated into her RFC. *Id.*

The ALJ's discussion and analysis provide an adequate basis for relying on the VE's testimony. *See Haas*, 91 F. A'ppx at 947; *Carey*, 230 F.3d at 146. Moreover, a review of the records reveals that the Physical RFC Assessment found that Plaintiff could stand and/or walk about 6 hours in an 8-hour workday. Tr. at 270.

The Court does not ignore that neither the ALJ nor the VE provided an explanation for stating that Plaintiff was capable of light work, which may require approximately 6 hours of standing or walking, when Plaintiff's RFC limits her to 4 to 6 hours of standing or walk. But Plaintiff had an opportunity to raise the issue of this alleged conflict at the hearing so that the ALJ could recognize and explain any potential conflict and failed to do so. Instead, Plaintiff waited until appealing her claim to this Court to present the conflict as a reversible error, a practice frowned upon by the Fifth Circuit. *See Carey*, 230 F.3d at 146-47.

The Court is therefore left with the VE's clear and unchallenged testimony that, even considering Plaintiff's limitations, a significant number of jobs were available for a wide range of unskilled light work to provide Plaintiff substantial gainful employment. The Court concludes that substantial evidence exists to support the ALJ's

finding that Plaintiff was not disabled. Accordingly, remand is not required on this ground.

2.     There is No Reversible Error under *Stone v. Heckler*.

Plaintiff next argues that the ALJ committed a *Stone* error by failing to find that Plaintiff's memory loss was a severe impairment and committed further error because the RFC contained no limitations regarding memory loss. *See* Dkt. No. 17 at 13.

At Step 2, the primary analysis is whether a claimant's impairment, or combination of impairments, is severe, irrespective of age, education, or work experience. *See Stone*, 752 F.2d at 1100. In *Stone*, the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d at 1308, 1311 (5th Cir. 1986). A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106. Notwithstanding this

presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept. 4, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *adopted by* 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011), *aff'd* 706 F.3d 600 (5th Cir. 2012) (applying harmless error analysis in *Stone* error cases).

In his decision, the ALJ referenced *Stone* and set forth the following severity standard: an "impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or combination of slight abnormalities that would <u>have no more than a minimal effect on an individual's ability to work</u>." Tr. at 19. (emphasis added). This language is similar to that at issue in *Sanders v. Astrue*, No. 3:07-cv-1827-G-BH, 2008 WL 4211146, at *7 (N.D. Tex. Sept. 12, 2008). In *Sanders*, the ALJ made no reference to *Stone* but stated that an "impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or combination of slight abnormalities <u>that would have no more than a minimal effect on an individual's ability to work</u>." *Id.* (emphasis in original). The court in *Sanders* reasoned that this language indicated that the impairment could have, "at most, a minimal effect on a claimant's

ability to work." *Id.* Because the standard set forth in *Stone* "provides no allowance for minimal interference on a claimant's ability to work," the language in *Sanders* was not a proper recitation of the severity standard. *Id.*

As in *Sanders*, the standard recited by the ALJ here allows for a minimal effect on the claimant's ability to work. The *Stone* severity standard does not allow for <u>any</u> interference with work ability – even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *5 (N.D. Tex. Sept. 4, 2012). Thus, despite having referenced *Stone* in his decision, the ALJ did not actually state the same standard mandated by *Stone*.

In the past, this would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins*, 598 F. Supp. 2d at 806-07; *Sanders*, 2008 WL 4211146, at *8. More recently, however, courts have not automatically remanded such cases. *See, e.g., Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-6 (N.D. Tex. June 7, 2013). Rather, the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted by a showing that the correct legal standard was actually applied by the ALJ, *see Morris*, 2012 WL 4468185, at *9, or that the error was harmless, *see Taylor*, 706 F.3d at 603; *Yanez v. Colvin*, No. 3:12-cv-1796-K-BG, 2013 WL 4766836, at *3 (N.D. Tex. Sept. 5, 2013).

Under either analysis – rebutting the presumption or reviewing for harmless error – substantial evidence supports the ALJ's finding that Plaintiff's memory impairment was not a severe impairment. Even though the ALJ misstated the *Stone*

severity standard, a review of his decision and the medical records indicates that the ALJ properly analyzed the claimant's impairments. The records are entirely consistent with a *Stone* finding of nonseverity. Simply put, there is no evidence that Plaintiff's impairments rendered Plaintiff unable to work. While there are some records that indicate Plaintiff may have had strokes or other cerebral events, *see* Tr. at 255, 261, 319, many medical records state that Plaintiff had no real deficits and scored perfectly on Short Orientation Memory Concentration tests, *see, e.g., id.* at 175, 198, 267. Still other records indicate no acute findings and/or normal results. *See id.* at 218, 239.

This is not a situation in which the ALJ cited the incorrect severity standard and then ignored medical records that would support a finding of severity. *See, e.g., Scott v. Comm'r*, No. 3:11-cv-152-BF, 2012 WL 1058120, at *7-8 (N.D. Tex. Mar. 29, 2012); *Scroggins*, 598 F. Supp. 2d at 805-06; *Sanders*, 2008 WL 4211146, at *7. Rather, the ALJ cited *Stone* and stated a severity standard that has been held to be incorrect but nonetheless examined the medical records and demonstrated that there was no evidence dictating an impairment that would prevent Plaintiff from engaging in substantial gainful activity. *See* Tr. at 19, 21-22. The ALJ reviewed and considered Plaintiff's testimony and discussed many of her medical records, detailing her hospital and doctor visits related to her hypertension and transient ischemic attacks. *See id.* at 21-22.

Thus, substantial evidence supports the ALJ's finding that the impairments were not severe. As such, even though the ALJ invoked varying severity standards initially – an incorrect recitation of the *Stone* severity standard but also a citation to

*Stone* – which created ambiguity as to whether the proper severity standard was used, a review of the record as a whole reveals that the ALJ applied the proper standard in evaluating Plaintiff's impairments. *See Morris*, 2012 WL 4468185, at *9. The Court will not order remand simply because the ALJ did not use the "magic words" in his analysis. Indeed, remand is not required when it is clear, as in this case, that the ALJ applied the correct legal standard throughout, even though the ALJ's reference to the *Stone* standard was ambiguous.

Moreover, even assuming *arguendo* that the ALJ did commit a *Stone* error, the Court finds such error to be harmless. The ALJ did consider Plaintiff's alleged memory deficits, despite finding no medical record evidence to support them. *See* Tr. at 23. He then incorporated some of the limitations into his RFC determination. *See id.* Moreover, as evidenced by the medical records detailed above, had the ALJ expressly found that Plaintiff's conditions are not severe based on a standard at odds with *Stone*, on the record in this case, substantial evidence would support that finding of non-severity even under the *Stone* standard. *See Taylor*, 706 F.3d at 603.

Accordingly, remand is not required on this ground.

## Conclusion

The hearing decision is affirmed in all respects, and Plaintiff's request for reversal and remand [Dkt. No. 17] is denied.

DATED: December 10, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE